# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1635V
UNPUBLISHED

| | |
|---|---|
| DORRIS LUND,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: April 25, 2023<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling<br>on the Record; Findings of Fact;<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA); |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Emily Manoso*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON ENTITLEMENT[1]

On November 20, 2020, Dorris Lund filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 24, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons described below, I find that Petitioner is entitled to compensation.

---

[1] Because this unpublished ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.   **Relevant Procedural History**

Well after the claim's initiation, Respondent filed a Rule 4(c) Report on April 18, 2022, opposing compensation and arguing that Petitioner could not meet the six-month severity requirement of the Vaccine Act. Respondent's Rule 4(c) Report ("Report"), ECF No. 25. Thereafter, pursuant to a June 13, 2022 Scheduling Order, Petitioner filed a motion for a ruling on the record on August 1, 2022. ECF No. 29 ("Mot."). Petitioner argues therein that she meets the Table Claim requirements for a SIRVA, and the severity requirement. Mot. at 5-8. Respondent reacted to the motion on August 29, 2022. ECF No. 31 ("Opp."). Respondent argues that Petitioner's SIRVA did not persist for more than six months, and therefore fails to meet the severity requirement of the Vaccine Act. Opp. at 6-10. Petitioner did not file a reply.

II.   **Petitioner's Medical Records**

Petitioner received a flu vaccine in her right shoulder on October 24, 2018, at Kokomo Internal Medicine. Ex. 1 at 1, Ex. 2 at 46. On October 31, 2018, Petitioner contacted Kokomo Internal Medicine and reported having "issues [with her] arm since getting a flu shot." Ex. 2 at 42.

Petitioner again contacted Kokomo Internal Medicine on November 5, 2018, and reported that she was "still having pain in her arm where she receive[d] flu vaccine". Ex. 2 at 42. Petitioner was seen that day for "mild but very annoying/slightly worsening" right shoulder pain. *Id.* at 43. Her arm was noted as exhibiting a decreased range of motion, but no weakness. *Id.* X-rays were taken, which showed minimal degenerative changes. Ex. 3 at 248. Petitioner was instructed on shoulder exercises and referred to physical therapy. Ex. 2 at 43.

On November 13, 2018, Petitioner attended physical therapy at Ascension St. Vincent Physical & Sports Therapy. Ex. 3 at 285. Petitioner now reported that she had experienced progressively worsening arm pain following a flu shot on October 24, 2018, although it was "not as bad as last week." *Id.* She described her pain as two out of ten while at rest, and five out of ten with activity. *Id.*

Between November 13, 2018, and March 1, 2019, Petitioner attended twenty-five physical therapy sessions. Ex. 3 at 342-421. Her right shoulder pain quickly improved, and as early as November 27, 2018, she reported minimal pain with certain movements. *Id.* at 411 (reporting pain of one out of ten with some exercises). By December 13, 2018, Petitioner reported her arm had improved and her therapy goals were met. *Id.* at 401. However, at that time she began seeking care for left shoulder pain, and that Petitioner "thinks she was using it more while favoring the right" shoulder. *Id.* at 399. Petitioner's

2

last physical therapy session for right arm pain was on December 17, 2018. *Id.* at 393. At that time, she reported her right arm continued to feel good, although certain motions were "a little painful." *Id.*

Petitioner contacted Kokomo on December 7, 2018, for treatment of left shoulder pain. Ex. 2 at 37. The record states that Petitioner was currently in physical therapy for right arm pain that resulted from a flu shot in October. *Id.* Petitioner began physical therapy for her left arm pain that "may be due to overusing left arm while getting P.T. on right." *Id.* Further, Petitioner had previous issues with her left shoulder stemming from a car accident in 2008. *Id.*

From December 20, 2018 through March 1, 2019 Petitioner attended physical therapy primarily for her left shoulder. Ex. 3 at 393-46. There are limited references to Petitioner's right shoulder during this period, including on January 15, 2019 (*id.* at 137, stating Petitioner's right shoulder range of motion was within functional limits with minimal pain); on January 31, 2019 (*id.* at 363 stating Petitioner complained of bilateral shoulder pain that day, but "could be weather related"), and March 1, 2019 (*id.* at 346). March 1, 2019, was Petitioner's last physical therapy sessions. At that time, the records indicate she met most of her long-term goals with regard to her right shoulder but failed to improve her right arm strength, which was rated as four out of five. *Id.*

Petitioner had a follow-up for her left shoulder pain with her primary care physician on February 18, 2019, although the assessment discusses both shoulders. Ex. 2 at 34, 38. With regard to her right shoulder, the record states that she had pain that was mild but "annoying/slightly worsening" with decreased range of motion. *Id.* at 38. Petitioner next saw her primary care physician on April 23 and June 4, 2019. Ex. 2 at 22, 27-32. There is no discussion of shoulder pain during those visits.

Three months later, on September 26, 2019, Petitioner saw Dr. Marley Fagg for an annual physical. Ex. 2 at 17. She reported shoulder pain, prior physical therapy, and decreased range of motion bilaterally. *Id.* at 21. Petitioner saw Dr. Fagg again on October 4, 2019. Ex. 2 at 16. With regard to shoulder pain, the record states "improved with physical therapy- finished it 1 week ago. chronic. stable. no side effects. not started physical therapy. left one worse. right one- prior [history] flu shot caused pain. stable." *Id.*

On November 19, 2019, Petitioner saw Nurse Practitioner ("NP") Amy Julian-Resner at Ascension Medical Group – Kokomo Orthopedics as a new patient for bilateral shoulder pain. Ex. 4 at 7. Petitioner now reported that she had left shoulder pain since 2008 motor vehicle accident. *Id.* at 10. X-rays revealed a replacement was necessary. *Id.* at 11. With regard to her right shoulder, she reported pain for over six months following a

flu vaccine. Ex. 4 at 10. Petitioner also stated that she had completed therapy but was still not able to lift anything over five pounds or do her hair. *Id.* X-rays showed mild degenerative changes, and she was diagnosed with adhesive capsulitis. Manipulation and an injection was recommended. *Id.* at 11.

Petitioner underwent right shoulder manipulation and a corticosteroid injection on December 4, 2019. Ex. 5 at 600. The history of her illness states she developed pain and stiffness in her shoulder after having a flu shot. *Id.*

On January 29, 2020, Petitioner saw NP Julian-Resner for her initial postoperative follow-up. Ex. 4 at 12. She reported no improvement in range of motion, and she still had pain. *Id.* at 15. However, she did not attend physical therapy after her surgery. *Id.*

Petitioner attended seven physical therapy sessions between February 20, 2020 and March 26, 2020. Ex. 5 at 668-84. With regard to the course of her injury, Petitioner stated her pain started after a flu shot on October 24, 2018. *Id.* at 668. She previously attended physical therapy, and "[b]y the end of therapy she was doing well and pain free. Currently patient states she started having problems again and could not raise her R[ight] arm." By March 26, 2020, she reported no right shoulder pain and range of motion within functional limits. *Id.* at 669.

Petitioner saw Dr. Aaron Legrand at her second postoperative follow-up appointment on March 5, 2020. Ex. 4 at 17. She stated her right shoulder had slight pain with range of motion at that time. Ex. 4 at 20. Petitioner attended occupational therapy in March and showed swift improvement. By March 26, 2020, she reported no pain in her right shoulder, and range of motion within functional limits. Ex. 5 at 669.

### III.   Parties' Arguments

Petitioner asserts that she satisfies all legal prerequisites for compensation. Mot. at 5-8. In particular, Petitioner argues that she meets the Table requirements for a SIRVA (Mot. at 5-6) and that her injury has persisted for more than six months. Mot. at 6-8. Respondent argues that Petitioner has not established she suffered the residual effects or complications of her SIRVA for more than six months. Opp. at 6-10.

### IV.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  See § 11(c)(1)(A)(B)(D)(E).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Petitioner Meets the Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on October 24, 2018, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through April 24, 2019. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner initially sought treatment for her shoulder injury on October 31, 2018. Ex. 2 at 42. However, Respondent argues that Petitioner's symptoms resolved as early as December of 2018, or by February 18, 2019 at the latest. Opp. at 6.

Petitioner's medical records from December indicate her right shoulder was improving, and only a little painful at that time. Ex. 3 at 393. Further, while the bulk of Petitioner's treatment in the winter of 2019 was for *left* shoulder pain, the records continue to show she had pain and decreased range of motion in her right shoulder as of at least February 18, 2019. Ex. 2 at 38. Additionally, the record from Petitioner's last physical therapy session on March 1, 2019, states that even though she had met her long-term goals with regard to her right shoulder, she continued to experience reduced strength. Ex. 3 at 346.

Petitioner did not mention shoulder pain thereafter for seven months. Ex. 2 at 17. However, she continued to link the pain to the flu vaccine from the fall of 2019, indicating that she had continued to experience the effects of her injury since the vaccination. Ex. 2 at 16 (October 4, 2019, record stating that Petitioner continued to have shoulder pain and "flu shot caused pain"); Ex. 4 at 10 (record from November 19, 2019 stating that Petitioner had pain for over six months following a flu vaccine). Although a petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion, the fact that a petitioner did not receive medical treatment for a solid/continuous six-month period does not necessarily mean that there are no remaining residual effects of the injury within the period. *See, e.g., Herren*, 2014 WL 3889070, at *3 (finding that petitioner suffered from residual symptoms that, due to their mild nature, did not require medical care).

Consideration of the entire record reveals preponderant evidence[4] in support of a finding that severity has been met. While Petitioner's early success in treating her shoulder and gaps in treatment suggest her injury was not all that severe, the fact that in subsequent contemporaneous records she related her injury to the vaccination, and that she unquestionably sought treatment for it in September and October 2019, all establish more than six months of injury sequelae. While this record overall may suggest Petitioner's SIRVA was mild and not consistently a problem, that goes more to damages than whether the Vaccine Act's temporal severity requirement is met.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

---

[4] At worst, this case represents a "close-call," and in "the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013).

### 1. Petitioner Had no Prior Right Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her right shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records establish onset of her injury close-in-time to vaccination. Petitioner first sought treatment one week after her October 24, 2018 vaccination. Ex. 2 at 42. Further, Respondent has not contested that Petitioner meets this criterion. Accordingly, and based upon the above, I find there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain was more likely than not within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Right Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to her right shoulder. Respondent does not contest this aspect of Petitioner's claim, and the records consistently report shoulder pain and loss of range of motion in her right shoulder, which is consistent with other SIRVA cases. While Petitioner also reported pain (and sought treatment) for left shoulder pain at times, that does not appear to be related to her SIRVA, and would not in this case bear on entitlement (or damages for that matter). *See* Ex. 2 at 37 (noting a history of pain in the left shoulder due to a motor vehicle accident). Accordingly, preponderant evidence establishes that Petitioner's pain was limited to her right shoulder.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists. Petitioner's records indicating minimal degenerative changes in her right shoulder may be relevant and factored into Petitioner's damages, but it does not explain Petitioner's symptoms.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 24, 2018, in the United States. Ex. 1 at 1, Ex. 2 at 46; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 6 at 1; Section 11(c)(1)(E) (lack of prior civil award).

Further, onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). There is also no other condition that which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(a)(XIV)(B). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of his SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). As discussed above, I found that Petitioner suffered the residual effects of her shoulder injury for more than six months.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### V. Damages

Petitioner requests $124,000.00 for pain and suffering. Mot. at 8. I decline to decide damages at this time, however. Instead, the parties are directed to discuss whether damages can be decided informally. If they cannot come to an agreement within 30 days, additional briefing may be ordered.

## Conclusion

In view of the record, I find preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA, and that Petitioner is entitled to compensation.

The parties shall file a Joint Status Report by <u>May 25, 2023</u>, indicating whether settlement discussions are likely to be productive.

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master